## WALKER v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 6806.

Circuit Court of Appeals, Fifth Circuit.

Feb. 15, 1933.

*Rehearing denied —— F. (2d) ——.

S. L. Herold and Elias Goldstein, both of Shreveport, La., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and F. Edward Mitchell, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The petitioner, H. C. Walker, Jr., appealed to the Board of Tax Appeals from a determination, made in November, 1927, of the Commissioner of Internal Revenue assessing additional taxes against him for the years 1923 and 1924. In his original petition petitioner complained of the action of the Commissioner principally on the ground that that official disallowed a claim of the petitioner that he was entitled to a depletion allowance against the sum received by petitioner from royalty under an oil and gas lease pursuant to an agreement hereinafter mentioned. By an amended petition filed in April, 1930, peti-

tioner challenged that determination on the additional ground that the moneys received by him under the above mentioned agreement during the years 1923 and 1924 did not constitute taxable income of petitioner for those years, and that petitioner owed no income tax whatever thereon. Petitioner's above-mentioned contentions were rejected by the Board of Tax Appeals.

Prior to June 23, 1920, H. C. Walker, Jr., (the petitioner), Elias Goldstein, and George West claimed certain royalty interests in Louisiana oil lands under one title, and the firm of Foster, Looney & Wilkinson claimed royalty interests in the same lands arising under an adverse title; the opposing claimants of title then being engaged in litigation. The above-named claimants of inconsistent royalty rights compromised their dispute by an agreement evidenced by a written instrument dated June 23, 1920, in which Walker, Goldstein, and West were called vendors, and Foster, Looney, and Wilkinson were called vendees, that instrument being in form a sale without warranty by Walker, Goldstein and West to Foster, Looney & Wilkinson of a one-sixteenth royalty interest in said land for a consideration of $200,000, if produced from that royalty interest, and to be paid as stated below. Under that agreement the vendees were entitled to receive and retain all sums accruing to the credit of said royalty interest up to June 1, 1920; all sums thereafter accruing to the credit of that interest to be paid to the City Savings Bank & Trust Company of Shreveport, La., designated, "Agent of all parties hereto for the purpose of receiving such royalty, acknowledging receipt thereof, and holding and distributing the sums in accordance with the provisions of the contract"; those sums to be by that bank deposited to the credit of an account entitled, "Escrow Account, George West, H. C. Walker, Jr., and Elias Goldstein"; and that bank, on the 2nd day of January in each of the years 1921, 1922, 1923, and 1924, there being sufficient funds to the credit of said account, to transfer $50,000 from that account to the credit of the vendors in the proportion of one-third each. In any event the vendors were to receive in the way stated the sum of $200,000 and no more if the amount to the credit of the described account should reach that sum. That instrument contained the following provisions: "During the term of this contract, and as long as money shall be deposited with it hereunder, the said City Savings Bank & Trust Company shall pay interest on the daily balances to the credit of the aforesaid escrow account at the rate of four per cent.

(4%) per annum, such interest payments to be added to and to form a portion of the funds to the credit of the aforesaid account, and to be credited by the said bank quarterly until the said sum of Two Hundred Thousand ($200,000.00) Dollars shall have been credited to said account, when and thereafter such interest payments on the sums remaining on deposit in said bank under the terms hereof shall be paid to the vendees. * * * When the said vendors shall have received the full sum of Two Hundred Thousand ($200,000.-00) Dollars, as herein provided, the said bank shall pay over to the said vendees any and all sums yet remaining to the credit of the aforesaid escrow account; and from and after such date all monies accruing to the credit of the aforesaid one-sixteenth (1/16) interest shall be paid direct to these vendees and these vendors shall have no interest whatsoever therein." Sums accruing to the credit of that royalty interest after June 1, 1920, amounting in the aggregate to $200,000.01, were paid in to the bank for said account during the years 1921 and 1922. Out of that account the bank paid to Walker and Goldstein $50,000 in each of the years 1921, 1922, 1923, and 1924, after Walker and Goldstein had purchased from West his interest under the agreement. In his income tax returns for the taxable years 1921 to 1924, inclusive, the petitioner, who used a cash basis of accounting, included in his gross income sums paid to him under the above-mentioned agreement; in each of those years reporting the sum of $12,500 received from the fund mentioned. His wife filed separate returns under the community property laws of Louisiana, reporting the same amounts of income from the same source. Goldstein and his wife made like returns in the four years mentioned. The Commissioner accepted each of those returns as a basis for computing the taxpayer's tax liability.

The above-mentioned contract has been before this court in the cases of United States v. Looney, 29 F.(2d) 884, and Barnette v. Commissioner of Internal Revenue, 49 F.(2d) 265, which concerned income taxes for 1921 of members of the firm of Foster, Looney & Wilkinson. Neither of those cases involved a question as to the tax liability of other parties to that contract resulting from compliance with its provisions with reference to payments to be made to them. An effect of that contract was that Walker, Goldstein, and West parted with whatever right they had or claimed in or to the one-sixteenth royalty interest, except the rights to have all sums, up to a total of $200,000, accruing to the credit of that royalty interest after June 1, 1920, paid to a designated bank, to be deposited to the credit of a described account, and to have that bank, on a stated date in each of four succeeding years, or as soon thereafter as the amount to the credit of the account should be sufficient for that purpose, withdraw from that account the sum of $50,-000 and credit that sum to Walker, Goldstein, and West in stated proportions. However soon after June 1, 1920, sums accruing to the credit of the royalty interest might reach a total of $200,000, under the contract Walker, Goldstein, and West were not entitled to receive the whole or a part of the consideration receivable by them except in accordance with the provision for installment payments by the bank out of the fund deposited with it. The other parties to the contract, Foster, Looney & Wilkinson, had a substantial interest in the provision as to installment payments being complied with, resulting from the provisions with reference to interest, under which required payments of interest were to be added to and form a part of the fund out of which the stipulated installments were to be paid to Walker, Goldstein, and West, and any balance remaining in that fund after the payment of the last of the stipulated installments was to be paid to Foster, Looney & Wilkinson. The petitioner's right to share in the fund deposited in bank was fixed by the contract. During the years 1921 and 1922 he did not receive, and under the contract was not entitled to receive, from that fund more than he reported in his income tax returns for those years. What was returnable by him for each of those years as an item of gross income from that source was the sum he received during that year, that sum being the income from that source which was required to be included in gross income by the provision to the effect that the amount of items of gross income (with an exception not here material), shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under permitted methods of accounting, any such amounts are to be properly accounted for as of a different period. Revenue Act of 1921, §§ 212 (b), 213 (a), 42 Stat. 227, 237; 26 USCA §§ 953 (b), 954 (a) (and notes); Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297. If the above-mentioned written instrument properly may be regarded as evidencing a sale or other disposition by petitioner of property on the installment plan, in which the initial payment did not exceed one-fourth of the purchase price, under applicable statutes and regulations it was permissible for petitioner and his

wife together to return for each of the years 1921 and 1922 one-fourth, and no more, of his share of the amount of that price. Revenue Act of 1921, § 212 (b), 42 Stat. 227, 237; Revenue Act of 1926, §§ 212 (d), 1208, 26 USCA §§ 953 (a), 953a; Treasury Regulations 62, art. 42; Treasury Regulations 65, art. 42; Commissioner of Internal Revenue v. Moore (C. C. A.) 48 F.(2d) 526. Whether the transaction in question was or was not a sale or other disposition of property by the petitioner, under the contract he was without right to receive in any year from the fund provided for more than his share of $50,000. It not appearing that petitioner at any time used the accrual basis of accounting, it was permissible for him in his return for each of the years in which he received payments from the fund mentioned to include in his gross income the amount, and no more than the amount, of his share of the $50,-000 actually received during that year. Even if he had the election to include in his gross income for the years 1921 and 1922 both the amounts actually received by him from the fund mentioned during those years and amounts thereafter payable from that fund, his right to which accrued in those years as a result of the fund then reaching the total of $200,000, when by his amended petition filed in April, 1930, he first claimed the right to exclude from his gross income as reported for the years 1923 and 1924 the amounts received by him from the fund during those years, it no longer was open to him to do so, particularly as a result of such exclusion would be that collection of taxes based on petitioner's receipt of, or the accrual of his right to receive, the excluded sums would be barred by limitation. Commissioner of Internal Revenue v. Moore, supra.

Petitioner's claim that he was entitled to deductions for depletion allowances for the years 1923 and 1924 had not been urged in argument in his behalf. The total of the $200,000 fund from which petitioner was to be paid his part of the consideration receivable by him under the contract having been deposited in the bank before the end of the year 1922, in the years 1923 and 1924 petitioner had no interest in the oil in place in the leased land. This being so, he was not entitled to the depletion allowances claimed.

No error appearing in the record, the petition is denied.