**EDWARD G. SWARTZ, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 7168.**

Circuit Court of Appeals, Fifth Circuit.

March 15, 1934.

---

**Bertha H. SAENGER, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7147.**

Circuit Court of Appeals, Fifth Circuit.

March 10, 1934.

S. L. Herold, of Shreveport, La., for petitioner.

634

Hugh Satterlee, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen.; Norman D. Keller and Sewall Key, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

What petitioner began in March, 1928, as a contestation before the Board of a $273.-08 deficiency assessment, and a claimed overassessment of $1,493.61 in its 1926 income tax, was converted by a complete volte face in November, 1929, into a claim that no taxes whatever were due. The petition first filed attacked as inadequate the depletion allowed because based on an estimated cut of 19,142,-787 feet instead of 21,286,585 feet actually cut, an excess of 2,143,798 feet cut in 1926. The amended petition does indeed make the same attack, but only in the alternative. No evidence was offered in support of this claim; no complaint is made here on this head against the findings of the Board. Its main contention is that the whole tax should be abated as erroneously laid against it. The point made is that under the rule in Earl's Case, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, the income was not its income, but Swartz's. Another contention is that when Swartz made his timber contract in 1919 it resulted in a closed transaction, and thereafter his right was not in the timber, but in the contract. That the contract had a fair market value at that time of $1,400,000, the timber a value of $15 per thousand, and that the proper basis for depletion and for amortization of the contract was the fair market value on that date.

Petitioner's, however, is not the only volte face made. Respondent before the Board filed a brief admitting that unless the petitioner was estopped by the return it made to say otherwise, it was not taxable because the payments which the lumber company had made were not its income, but Swartz's. Here he repudiates that admission.

The Board filed an opinion, comprehensive, painstaking, and thorough. It fully set out the contract between Swartz and the St. Bernard Cypress Company, Limited, the origin of the income in question, and a sufficiently full statement of the other facts in the case. 25 B. T. A. 1065. The Board thought the income taxable to petitioner and that the depletion had been properly allowed. We are of the same opinion.

In 1919 Swartz, the owner of bodies of timber of considerable size, some acquired before and some after March 1, 1913, entered into a profit-sharing contract with the St. Bernard Cypress Company, Limited. Under its terms the timber was to be cut over a period of years; Swartz was to be paid as the timber was cut $9 per thousand feet for cypress, and $5 per thousand for pecky cypress, and in addition, one-half of the net profits realized from the sale of the lumber. The value of the timber owned by Swartz on March 1, 1913, was $365,973.48. The cost to him of the timber acquired after that date was $233,540.10. In 1922 Swartz caused petitioner to be formed with an authorized

capital stock, all shares of which, except two qualifying shares, were issued to him. On that day Swartz, by assignment indorsed on the contract, did "transfer, set over, assign, exchange and abandon unto the corporation named and doing business under the name of Edward G. Swartz, Inc., all his right, title and interest whatsoever that may be in and to the foregoing contract." The cypress company, having no notice of this assignment, continued to make payments to Swartz, who paid them to petitioner. By December, 1926, the cutting was completed; the contract had been fully performed in accordance with its terms. The annual payments made during the term of the contract aggregated $2,037,-321.77. Neither Swartz nor the cypress company reported the transaction in 1919 as a sale and purchase of timber. In Swartz's return for the year 1919 no profit was reported as arising from the contract itself. For the years 1920, 1921, and 1922 the cypress company represented to the government that it owned no timber. Swartz reported as his the 1920 payment. He caused petitioner to report as its taxable income all payments made under the contract by the cypress company for 1921 to 1926, inclusive. Using as a base $599,513.58, the March 1 value and cost of timber, depletion has been allowed for each year's cut. Swartz got the allowance in 1920, petitioner in the years 1921 to 1926. The depletion allowed for 1926 was $85,920, arrived at on the basis agreed upon in conference between the taxpayer and the Commissioner.

Petitioner insists that the assignment Swartz made is not effective as a transfer of future payments under the contract. It argues that it was a mere abortive attempt to separate for taxation income and owner, returns from their source. In the Saenger Case (C. C. A.) 69 F.(2d) 631, just decided, we have pointed out that imperative and comprehensive as is the rule making ineffectual, devices for having income taxed to any but the owner of it, it does not operate to prevent bona fide transfers of that which is the right to income, nor to prevent taxing to a transferee income from a property or thing which has been really assigned to him. There the effort was to effect an arrangement by which the future earnings of Saenger should be taxed, not to him, but to his creature, the corporation he had formed. The income there was not the proceeds of anything he had assigned. It was compensation paid him as an officer. Here the situation is entirely different. Here the creator has assigned to the

creature the thing itself from which the income flows. Before the assignment Swartz was the owner of the income because he owned the contract which yielded it. After the assignment the company owned the income, for after it the contract was not Swartz's but its own. The petitioner's claim that it was not the owner of the income because Swartz had not assigned to it the timber but only the contract, is without merit. The actual, the present interest in the timber, the right to have it cut and marketed, and the right to the proceeds from that cutting and marketing, Swartz, by assigning the right and title to the contract, assigned to petitioner. Unless and until there was a breach sufficient to authorize cancellation of the contract, the right Swartz had in the timber was the right to insist that it be cut as the contract provided, and that he receive for it the price the contract fixed. These rights he fully assigned to petitioner. The ownership of these rights involved, it drew to itself all that proceeded from the contract. The owner of these rights was the owner of the income they produced. Nothing in the Earl Case, or in those which have followed it, makes these payments taxable to Swartz. To tax Swartz and not petitioner would, we think, be to impose a tax on one on account of the income of another. Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239; Hoeper v. Tax Comm., 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248; Rose v. Com'r (C. C. A.) 65 F.(2d) 616; Commissioner v. Olds (C. C. A.) 60 F.(2d) 252, 253; Hall v. Burnet, 60 App. D. C. 332, 54 F.(2d) 443, 83 A. L. R. 86; Copland v. Com'r (C. C. A.) 41 F.(2d) 501; Nelson v. Ferguson (C. C. A.) 56 F.(2d) 121.

This view makes it unnecessary for us to consider in detail respondent's position advanced as its sole defense before the Board and in the alternative here, that petitioner and Swartz, its sole owners, have by returning the income as petitioner's and not Swartz's, estopped themselves from now claiming the contrary. We think, however, that this position is sound and that limitation having now run against taxing it to Swartz, it is too late for him now to assert that he, and not his creature, whom for years he has induced the government to accept as the owner, is the real owner of the income. Planters' Cotton Oil Co. v. Hopkins (C. C. A.) 53 F.(2d) 825; Walker v. Com'r (C. C. A.) 63 F.(2d) 346; Commissioner v. Moore (C. C. A.) 48 F.(2d) 526; Lucas v. Hunt (C. C. A.) 45 F.(2d) 781; Hartwell Mills v. Rose (C. C. A.) 61 F.(2d) 441.

There remains only petitioner's contention that in 1919 there was a realized profit on a closed transaction, the exchange of timber for a contract having a then established value of $1,400,000, and that petitioner is entitled to use this value for depletion rather than the March 1913 and cost value.

We think there are two answers to this position: (1) There was no completed sale, no closed transaction. · Burnet v. Logan, 283 U. S. 404, 51 S. Ct. 550, 75 L. Ed. 1143; Peavy-Wilson Lbr. Co. v. Com'r (C. C. A.) 51 F.(2d) 163. (2) Swartz and petitioner have, from the making of the contract, not so treated it. In their income tax returns they have each year since the contract was made returned the income and agreed upon and taken an exhaustion allowance on a wholly different basis. Petitioner agrees that if there was no completed sale, the Commissioner used reasonable methods, fixed reasonable amounts. Swartz and petitioner are now estopped from claiming a different effect for the contract from the one they have so persistently affirmed. Walker v. Com'r, supra; Ramsey v. Com'r, 26 B. T. A. 281; Hartwell Mills v. Rose, supra. Construed in itself, and without the aid of the construction the parties gave it, the contract does not yield such meaning. But if it might be so construed, this is not its necessary effect, and all the parties concerned with it have, by their actions under it, given it a different meaning. As it reads and as it has been construed, it is a profit-sharing contract. By its terms the timber of Swartz and the milling and marketing facilities of the cypress company were pooled. The result of this pooling as to Swartz and petitioner, his transferee, has been to produce an annual return, measured by the progress of the cutting. All payments, until the complete workout had determined just what would be received, were mere payments on account. No closed transaction was effected by the arrangement on which present profits could be figured, no new basis established for figuring gain or loss, depletion or exhaustion. It was petitioner's burden to show that by the method used, or in the amounts allowed for exhaustion, it has in effect been compelled to pay as income on the return of its capital. Walker v. Com'r (C. C. A.) 65 F.(2d) 97; United States v. Ludey, 274 U. S. 302, 47 S. Ct. 608, 71 L. Ed. 1054; Burnet v. Logan, supra; Bankers' Pocahontas Coal Co. v. Burnet, 287 U. S. 308, 53 S. Ct. 150, 77 L. Ed. 325. It has not discharged this burden.

The petition is denied.