BECKER, Collector of Internal Revenue, v. BEMIS.

SAME v. SCHLAFLY.

Nos. 11422, 11423.

Circuit Court of Appeals, Eighth Circuit.

June 26, 1939.

Rehearing Denied July 24, 1939.

Harry Marselli, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Herbert H. Freer, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellant.

H. M. Stolar, of St. Louis, Mo. (Lowenhaupt, Waite & Stolar, Henry C. Lowenhaupt, and William H. Charles, all of St. Louis, Mo., on the brief), for appellees.

Before SANBORN and THOMAS, Circuit Judges, and SULLIVAN, District Judge.

SANBORN, Circuit Judge.

These are two actions at law brought to recover alleged overpayments of income taxes made by William N. Bemis and August Schlafly (both now deceased) in the year 1928. The taxpayers filed claims for refunds, which were denied, and these actions were brought by the executors of their estates. The facts were agreed to and the cases were tried to the court. They were submitted and decided together. From judgments for the executors, the Collector has appealed.

On December 21, 1922, the taxpayers and others entered into a pool agreement with a trust company in St. Louis, Missouri, for the purpose of purchasing common stock of Piggly Wiggly Stores, Inc. The trust company agreed to purchase the stock from Clarence Saunders at $32 a share with funds deposited by members of the pool, and, unless the stock was sold within 90 days and the proceeds divided among the members of the pool, to deliver the stock to the members on the basis of their respective contributions. The taxpayers each deposited $32,000 with the trust company pursuant to the pool agreement; and on March 23, 1923, none of the stock purchased by the trust company having been sold, each received from it 1,000 shares of Piggly Wiggly stock.

Prior to the formation of this pool in St. Louis and on or about November 30, 1922, a pool had been formed in Memphis, called the "Piggly Wiggly Pool A", for the purpose of trading in Piggly Wiggly stock. The members of this Memphis pool advanced the funds for the pool operations, and Clarence Saunders pledged 7,700 shares of his Piggly Wiggly common stock to secure the members of the pool, other than himself, against loss. The funds of this pool were lost, and the members in the year 1923 took over the 7,700 shares of stock pledged by Saunders. At that time the market value of the stock was $11 a share. The Commissioner of Internal Revenue ruled that the members of this Memphis pool, who had invested $750,000 in the pool and had lost everything except the 7,700 shares of pledged stock, "sustained a loss measured by the difference between the amount of cash advanced for the purpose of trading on the market and the fair market value of the stock received by the members of the pool, as at the date of its receipt by such members, by virtue of the guarantee against loss made by Mr. Saunders."

Neither of the taxpayers was a member of the Memphis pool. Each of them, in his income tax return for the year 1923, claimed a deduction for a loss of $21,000 on the basis of the ruling of the Commissioner with respect to the members of the Memphis pool. Mr. Bemis took his deduction under "Bad Debts (Explain in Schedule G)". In Schedule G, the explanation given was: "Loss Piggly Wiggly Pool as per Memo attached, $21,000.00, a loss of $21.00 per share on 1000 shares". The "memo" attached was the letter of the Commissioner containing his ruling with respect to the losses suffered by the mem-

bers of the Memphis pool.[1] Mr. Schlafly claimed his deduction under "Losses by Fire, Storm, etc. (Explain in Schedule F)". In Schedule F, under the heading "Kind of Property", he inserted " 'Piggly Wiggly', Treasury Dept. letter 12/27/23, IT:E:RR:EWG—Copy herewith attached". Under "Date Acquired" he wrote "1922", and under "Cost, or Value March 1, 1913", he wrote $32,000.00". He also attached to his return the same letter of the Commissioner with respect to the losses of the Memphis pool.

The Commissioner, believing that the facts with respect to the St. Louis pool transaction were the same as those with respect to the Memphis pool, allowed the deductions claimed by the taxpayers, and closing agreements were executed in accordance with the provisions of § 1106(b) of the Revenue Act of 1926, 44 Stat. 9, 113.

Both of the taxpayers in 1928 sold the Piggly Wiggly stock received by them from the St. Louis pool. Each received, as the proceeds of the sale $49,960. On March 16, 1929, Mr. Bemis filed his income tax return for 1928 with the Collector showing a total net income of $47,700.90, and a tax of $4,149.57, which he paid.

He reported a gain of $38,960 on the sale of his 1,000 shares of Piggly Wiggly stock, taking as the cost basis of the stock its market value of $11 a share on March 23, 1923, the time when he received it from the St. Louis pool. Mr. Schlafly, in his income tax return for 1928 showed a net income of $97,204.78, which included a gain of $38,960 from the sale of his 1,000 shares of Piggly Wiggly stock, which he computed upon the same basis which had been used by Mr. Bemis. Mr. Schlafly's tax was $9,903.68, and was paid. In his audit of the returns of both of these taxpayers, the Commissioner accepted as correct the gain reported by each of them from the sale of their Piggly Wiggly stock.

In December, 1930, each taxpayer filed with the Collector a claim for refund upon the ground that the actual cost of his stock was $32 a share, and not $11 a share as he reported. Mr. Bemis claimed an overpayment of income taxes for the year 1928 of $3,105.05. Mr. Schlafly claimed a similar overpayment of $3,039.90. Both claims were rejected.

By securing allowances of their claimed deductions for losses on Piggly Wiggly stock in 1923, the taxpayers effected re-

---

[1] "Treasury Department

"Refer to
IT:E:RR      Washington
EWG              December 27, 1923.
"Internal Revenue Agent in Charge,
"Nashville, Tennessee.

"Reference is made to your letter of November 30, 1923, requesting a ruling as to whether certain members of the Piggly Wiggly Pool are entitled to claim a loss for the year 1923.

"It appears that certain tax-payers in Memphis, Tennessee, together with Mr. Clarence Saunders, in 1922 formed what was known and designated as 'Piggly Wiggly Pool A'. The Members of this pool advanced $550,000.00 and Mr. Saunders advanced $200,000.00 cash, making a total amount of $750,000.00. In addition, Mr. Saunders put up 7,700 shares of common stock of no par value of the Piggly Wiggly Stores, incorporated. The purpose of the pool was to trade in stock of the Piggly Wiggly Stores, Incorporated, and any profit derived from the transactions was to be divided between the members of the pool in proportion to the amounts of money originally advanced by them. The Stock which was put up by Mr. Saunders had a market value at that time of $90.00 a share, or a total

of $693,000.00. The stock represented a guarantee made by Mr. Saunders to the other members of the pool against a loss of the amount of $550,000.00 cash advanced by them for the purpose of trading on the stock market. The market broke and the entire amount of $750,000.00 was lost, and the members of the pool, with the exception of Mr. Saunders, took over the 7,700 shares of the Piggly Wiggly common stock which had a market value at this time of approximately $11.00 a share, or represented a total amount of $54,700.00, showing a loss to the members of the pool of $495,300.00.

"A second pool known as 'Piggly Wiggly Pool B' was formed, the only difference between Pool B and Pool A being that a different kind of stock was deposited as security.

"It is held that the members of the pool sustained a loss measured by the difference between the amount of cash advanced for the purpose of trading on the market and the fair market value of the stock received by the members of the pool, as at the date of its receipt by such members, by the virtue of the guarantee against loss made by Mr. Saunders.
          "J. G. Bright,
               "Deputy Commissioner."

ductions in their income tax liability for that year. Mr. Bemis reduced his tax by $6,256.15. Mr. Schlafly reduced his by $5,797.43. At the time the taxpayers filed their claims for refund of overpayments of income taxes for the year 1928, the collection of 1923 deficiencies in their income taxes was barred by limitations.

■ The Collector contends that each of the taxpayers, having claimed a deduction in his income tax return for the year 1923 of $21 a share upon 1,000 shares of stock received by him from the St. Louis pool and having by his representations induced the Commissioner to allow that deduction, was precluded, after the running of the statute of limitations, from using $32 a share (the actual cost of his stock) as the basis for computing his gain from the sale of such stock in 1928.

The executors of the estates of the taxpayers contend that the taxpayers were not estopped or in any way precluded from asserting that in 1928 their gain was to be measured by the difference between what the taxpayers originally paid for their stock in 1922—namely, $32.00 a share—and what they sold it for in 1928, and that the failure of the Commissioner, within the period of limitations, to discover that in 1923 the taxpayers had secured deductions for losses which they had not suffered, is of no controlling importance in these cases.

The Revenue Act of 1928, c. 852, 45 Stat. 791, 815, 818; §§ 111 and 113, 26 U.S. C.A. §§ 111, 113 note, so far as here pertinent, provided that the gain from the sale of property should be the excess of the amount realized over cost.

The ruling of the District Court on the question of estoppel was as follows: "In our opinion, the facts as stipulated, fail to establish an equitable estoppel. There was not a false representation or concealment of material facts. The Deputy Commissioner's letter attached to the returns recited that members of the Memphis pool never owned any Piggly Wiggly stock; that they were to receive cash, not stock. The returns of the taxpayers do not assert that they were members of the Memphis pool or that they were members of a similar pool; the returns show on their face that the taxpayers had made deductions for losses on Piggly Wiggly stock; that they had purchased stock, not that they had contributed money. There is no showing that the taxpayers intended to mislead the Commissioner. The most that can be said is that the taxpayers made a representation of law that the same ruling should be made in regard to their transaction as was made in the Memphis transaction."

Upon the question as to whether the executors should be denied relief upon the ground that in equity and good conscience they ought not to recover, the District Court ruled that the case of McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, stood in the way of the Government's taking any benefit from the underpayment of taxes by the taxpayers in 1923.

It is apparent that the taxpayers had no intention of defrauding the Government in making their 1923 income tax returns. They had each furnished in December, 1922, $32,000 to the St. Louis pool wherewith to purchase Piggly Wiggly stock. It is probable that they regarded the pool as a distinct entity, that they expected that the stock purchased by it would be sold, and that they did not expect that they would individually acquire any of it. The break in the market which caused their acquisition of the stock in March, 1923, when it had fallen to $11 a share, was, no doubt, regarded by them as having resulted in as great a loss to them as to the members of the Memphis pool. As a practical matter, there was perhaps little difference between the effect upon the two pools—but the taxpayers had acquired their stock because they were the owners of it and not because of any contract of indemnity, a distinction sufficiently apparent to those learned in the law, but perhaps not quite so clear to others.

Mr. Bemis, by his sworn return for the year 1923, stated that in that year he had sustained a loss of $21,000—$21 a share on 1,000 shares "Piggly Wiggly Pool as per Memo attached". The Commissioner would, naturally, understand from this statement and the attached letter relating to the losses suffered by the Memphis pool, that Mr. Bemis had suffered a $21,000 loss, as a member of a Piggly Wiggly pool, on account of having been obliged to take over stock which had been pledged with the pool to secure its members against the loss of funds contributed for the purpose of trading in Piggly Wiggly stock. That this was the Commissioner's understanding and the basis for his allowance of the deduction seems fairly apparent. In his letter of July 30, 1932, denying the

Bemis claim for refund, he says: "On the basis of information on file in 1923 it appeared that the two pools known as the St. Louis pool and the Memphis pool were identical or at least that the same conditions governed their transactions."

He further says in this letter:

"The filing of claims for 1928 by members of the St. Louis pool was the first indication submitted to the Bureau of the distinction between the two pools and that the losses allowed in 1923 returns were erroneous. These claims were not filed until after the expiration of the period for assessing deficiencies for the year 1923.

"You claimed a loss in the amount of $21,000.00 (the difference between $32.00 and $11.00 per share) because of Piggly Wiggly stock transactions in filing your 1923 return and on your 1928 return claimed the adjusted basis of $11.00 per share for determining the profit derived from the sale of Piggly Wiggly stock. Both returns were made under oath and as no further information was submitted to the examining officer your statements of facts as set forth in your returns was accepted. You also signed an agreement form consenting to the adjustment of your income tax liability for the year 1923 in which the Piggly Wiggly stock transactions were accepted as reported and requested that your 1923 return be closed under section 1106 of the Revenue Act of 1926."

We do not regard the representations made by Mr. Schlafly in his 1923 income tax return as substantially different from those of Mr. Bemis. We think the inferences to be drawn from each are the same, namely, that these men had each suffered a loss during 1923 similar in all substantial respects to the losses suffered by the members of the Memphis Piggly Wiggly pool.

It is, of course, obvious that the basis for computing gain or loss from the sale of shares of Piggly Wiggly stock which were acquired by the members of the Memphis pool would be the market price of those shares at the time when acquired, or $11 a share. It is equally obvious that the cost basis of the members of the St. Louis pool should have been $32 a share, the price at which the pool had acquired the stock.

The question presented is whether the members of that pool, having held themselves out to be in the same situation as the members of the Memphis pool, having misled the Commissioner into believing that they were in that situation, and having secured and retained the fruits of the misstatements made by them in their 1923 income tax returns, could change their position after it was too late for the Commissioner to assess any deficiencies for the year 1923, and could then assert that they were mistaken with respect to their 1923 returns, and that the actual cost of their stock was $32 a share, and not $11 a share.

While, in a sense, the assertion made in their 1923 returns that they were entitled to have applied to their claimed deductions for losses the rule applicable to the Memphis pool members was a misrepresentation of law, it was also, we think, an assertion that the facts upon which the claims for deductions were based were similar to the facts which produced the ruling referred to by the taxpayers in their returns as the basis for their deductions. So it seems to us that the misstatements made by the taxpayers in their 1923 returns were the full equivalent of assertions of the existence of facts which justified the application of that ruling to their situation. See Alton v. First National Bank, 157 Mass. 341, 343, 32 N.E. 228, 18 L.R.A. 144, 34 Am.St.Rep. 285; Windram v. French, 151 Mass. 547, 551, 24 N.E. 914, 8 L.R.A. 750; Taylor v. Commissioner, 7 Cir., 89 F.2d 465, 468.

All of the elements of an estoppel are present in these cases. See Grouf v. State Nat. Bank, 8 Cir., 40 F.2d 2, 7; United States v. S. F. Scott & Sons, Inc., 1 Cir., 69 F.2d 728, 732; Robinson v. Commissioner, 6 Cir., 100 F.2d 847, 849. There were misrepresentations of material facts by the taxpayers in their 1923 returns. They knew what the true facts were. They did not disclose them. The Commissioner did not know them. The representations were made to induce the very action which the Commissioner took in reliance upon the misstatements. This action of the Commissioner resulted in a benefit to the taxpayers and a detriment to the Government. When the Commissioner first learned the facts with respect to the St. Louis pool, it was too late to correct the situation created by the misrepresentations of the taxpayers with respect to their 1923 losses.

There is a suggestion by the appellees that the Commissioner, when the taxpayers' 1923 returns were filed, knew or should

have known the facts relative to the St. Louis pool and the differences which existed between it and the Memphis pool, and should have disallowed the deductions claimed by the taxpayers in their returns for that year. Mere suspicion that the Commissioner may have known the facts, together with the assertion that he should not have relied upon the statements made by the taxpayers in their 1923 returns, would not justify the conclusion that the Commissioner allowed the deductions claimed with full knowledge of the facts.

The defense of estoppel was available to the Collector in these cases. In R. H. Stearns Co. v. United States, 291 U.S. 54, page 61, 54 S.Ct. 325, page 328, 78 L. Ed. 647, the Supreme Court, with respect to § 609 of the Revenue Act of 1928, said: "We think it an unreasonable construction that would view the prohibition of the statute as overriding the doctrine of estoppel (Randon v. Toby, 11 How. 493, 519, 13 L. Ed. 784) and invalidating a credit made at the taxpayer's request. Here at the time of the request, the liability was still alive, unaffected as yet by any statutory bar."

The court further said in that case (291 U.S. page 61, 54 S.Ct. page 328, 78 L.Ed. 647): "The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him, in effect: 'This is your own act, and therefore you are not damnified.'' Dolan v. Rodgers, 149 N.Y. 489, 491, 44 N. E. 167; and Imperator Realty Co. v. Tull, 228 N.Y. 447, 457, 127 N.E. 263; quoting West v. Blakeway, 12 Man. & G. 729, 751 [828, 839]. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. Imperator Realty Co. v. Tull, supra. A suit may not be built on an omission induced by him who sues. Swain v. Seamens, 9 Wall. 254, 274, 19 L.Ed. 554; United States v. Peck, 102 U.S. 64, 26 L.Ed. 46; Thomson v. Poor, 147 N.Y. 402, 42 N.E. 13; New Zealand Shipping Co. v. Société des Ateliers, [1919] A.C. 1, 6; Williston, Contracts, Vol. 2, §§ 689, 692.'"

The case of McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, does not hold that the defense of estoppel is not available in cases such as those at bar. It is expressly stated in the opinion in that case that the question of estoppel was not pressed. The ruling in that case is that equitable principles—not amounting to an estoppel—which, in the absence of Sections 607 and 609(a) of the Revenue Act of 1928, 26 U.S.C.A. §§ 1670(a) (2), 1675(a), would preclude a recovery of an overpayment by a taxpayer, were not sufficient to override the requirements of those Sections that overpayments shall be credited or refunded to the taxpayer, and that an overpayment made by him in one year may not be credited by the Government against a barred deficiency for another year.

We think that the misrepresentation made by the taxpayers in their 1923 income tax returns—and in effect reiterated by them in their returns for the year 1928, when they computed their gains from the sale of their Piggly Wiggly stock upon a cost basis of $11 a share—had the effect of conclusively establishing the cost of their Piggly Wiggly stock upon that basis, regardless of what it actually cost them. As was said in Alamo Nat. Bank v. Commissioner, 5 Cir., 95 F.2d 622, 623, "Whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected." See, also, Larkin v. United States, 8 Cir., 78 F.2d 951, 954; Fordyce v. Helvering, 8 Cir., 78 F.2d 525, 528; Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 325; Askin & Marine Co. v. Commissioner, 2 Cir., 66 F.2d 776, 778; Bothwell v. Commissioner, 10 Cir., 77 F.2d 35, 37; First National Bank v. United States, 10 Cir., 86 F.2d 938, 942; Commissioner v. Farren, 10 Cir., 82 F.2d 141, 143; Edward G. Swartz, Inc. v. Commissioner, 5 Cir., 69 F.2d 633, 635; Haag v. Commissioner, 7 Cir., 59 F.2d 514, 515; Lofquist Realty Co. v. Commissioner, 7 Cir., 102 F.2d 945, 948; Wheelock v. Commissioner, 5 Cir., 77 F.2d 474, 477; Robinson v. Commissioner, 6 Cir., 100 F.2d 847, 849; Newaygo Portland Cement Co. v. Helvering, 64 App.D.C. 278, 77 F.2d 536, 538.

The judgments are reversed and the cases remanded with directions to enter judgments in favor of the appellant.