**HELVERING, Commissioner of Internal Revenue, v. SCHINE CHAIN THEATRES, Inc.**

No. 328.

Circuit Court of Appeals, Second Circuit.

July 21, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Harry Marselli, Sp. Assts. to Atty. Gen., for petitioner.

John E. Hughes, of Chicago, Ill., and Willard S. McKay. of New York City, for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up on a petition to review an order of the Board, expunging a deficiency in the taxpayer's income tax for the year 1933; the only question is whether the Commissioner was right in increasing the gross income by the sum of $629,805.91. The facts on which this depends are as follows. In August, 1929, the taxpayer was a holding company for some twelve corporations, all of which leased or subleased theatres to the Fox Metropolitan Playhouses, Inc. The lessee paid to the taxpayer, as parent company, the sum of $440,753.46, as an initial payment, and all the leases contained the following provision, "such payment being * * * in consideration of

the execution of this lease * * * and * * * no part thereof shall under any circumstances be returned to the Tenant notwithstanding any termination of this lease for any reason whatsoever prior to the expiration by lapse of time of the term hereof." In the same month, two other corporations—not affiliated with the taxpayer—received $38,183.26 for leasing their theatres to the Fox Metropolitan Playhouses, Inc., which they paid to the taxpayer as a commission for negotiating the leases and for a protective agreement touching them. In the same month, Fox Metropolitan Playhouses, Inc., paid $44,061.62 to the taxpayer directly for constructing and letting to it a new theatre. The taxpayer reported some $10,000 of these three amounts as income for the year 1929 and entered the balance upon its books as "Advance Rentals Received," which it did not report as income at all. In January, 1931, an internal revenue agent examined the taxpayer's books and one of its accountants gave him one of the leases and showed him the accountant's working papers, containing an amortization schedule of the sums so received. The agent in his report recommended that the return be accepted as filed, and the "agent in charge" sent the taxpayer a form letter stating that he too so recommended. The taxpayer later made a return for the eight months ending August 31, 1930, still reporting the unamortized deposits as liabilities. Another revenue agent, after an interview with the taxpayer's accountant and comparison of the entries in that return with the taxpayer's books, passed it also, the accountant telling him that this method had been accepted by the first agent. A reviewing officer who examined the second agent's report on April 23, 1931, also confirmed it but he added this note: "There is a question whether * * * the entire amount of prepaid rent received during the year should be reported as income or only the amount prorated over the life of the leases as reported by the taxpayer." The report with this notation was received by the "Bureau of Internal Revenue" on August 4, 1931, and kept without complaint or question.

In 1929 another holding company—Herkimer-Little Falls Corporation—had also presented its income tax return for that year, prepared by one of the taxpayer's accountants; in it was a similar item, amounting to $219,325.40, treated in the same way. This also passed the field agent, who declared in his report that "in the event of the abandonment of any of these theatres by the Fox Theatres, this money was to become the property of the respective lessor corporations and was to be used in part at least to replace deterioration." This report was likewise approved together with a second report of the Herkimer-Little Falls Corporation for the first eight months of 1930. (That company and its subsidiaries became affiliated with the taxpayer in 1932.) As of March 31, 1933, the District Court for the Southern District of New York in an insolvency proceeding cancelled all the leases for which these payments had been made; but the taxpayer continued to carry "Advance Rent" as a liability and to amortize the original payments in accordance with its schedule. The Commissioner disapproved this, and assessed the taxpayer for the balance remaining unamortized in 1933, by including it in the gross income for the fiscal year ending August 31, 1933. His position was that the taxpayer was "estopped" to deny the correctness of the method adopted in the preceding years, and that for tax purposes the unamortized balance of the deposits was to be treated as falling due because by their cancellation the leases had come to an end.

The Commissioner raises upon this appeal a subsidiary question based upon the fact that the figures in the taxpayer's return and in the report of the Board do not quite correspond with those in the taxpayer's books. His argument as to this appears to be that, since the figures are wrong, we cannot be sure that if the Board had known the right ones, it would have reached the same result. The disparity is slight and the argument slighter; what the Board went on was that in 1933 the taxpayer received no such item as the Commissioner added to its income, and that it was not inequitable for it to say so. What possible bearing the precise figures on the books would have had upon that issue we are at a loss to imagine.

■ Coming then to the substantial issue, everyone now agrees that the payments in question were in fact income only in the year 1929 when they were received. The time had passed in 1933 to assess a deficiency for that year, and unless the Commissioner can succeed upon some theory of "estoppel," the unfortunate fact is that a very large sum will escape taxation. On the other hand the Commissioner does not now argue—whatever he may have said before the Board—that the taxpayer practiced any fraud upon any of his agents; on the contrary it is not an exaggeration to say that with all the facts before them they delib-

erately chose not to include the whole item in the income for 1929, but to accept the method adopted by the taxpayer. We are not to confuse the situation, as apparently the Commissioner does, with that in which a taxpayer is suing for a refund and is met with a set-off whose collection the statute of limitations has barred. Claims for refund, however prosecuted, depend upon proving that the Treasury is retaining money which in justice belongs to the claimant, not only must he proceed within the statutory time prescribed, but the Treasury may show that he owes as much to it because of another and separate tax, even though the statute has made its collection impossible. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Stearns Co. v. United States, 291 U.S. 54, 59-61, 54 S.Ct. 325, 78 L.Ed. 647; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Ryan v. Alexander, 10 Cir., 118 F.2d 744, 748. Here the Commissioner is not setting off a barred liability against a claim for refund; nor is he attempting to assess a deficiency after the statute has barred it. He has not assessed any tax for the year 1929; he has attempted to assess one for 1933 on the theory that income was received in that year which was in fact received in 1929. There have indeed been occasions in which taxpayers have so misled him until after the time expired within which he could assess a deficiency, that courts have held them to the truth of what they said even though it was false. Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 325; Crane v. Commissioner, 1 Cir., 68 F.2d 640; Swartz v. Commissioner, 5 Cir., 69 F.2d 633, 635; Bothwell v. Commissioner, 10 Cir., 77 F.2d 35, 37; Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622; Robinson v. Commissioner, 6 Cir., 100 F.2d 847; Lofquist Realty Co. v. Commissioner, 7 Cir., 102 F.2d 945; Becker v. Bemis, 8 Cir., 104 F.2d 871. On the other hand we have ourselves twice refused to do so, our notion being that, if all the facts were available, the Commissioner was justified in relying upon the return for no more than the taxpayer's honest understanding of his liabilities, and that, if he wished to avoid the running of the statute, he must make up his mind for himself. Helvering v. Brooklyn City R. R. Co., 2 Cir., 72 F.2d 274; Commissioner v. Union Pacific R. R. Co., 2 Cir., 86 F.2d 637. See also Taylor v. Commissioner, 7 Cir., 89 F.2d 465.

But it is not necessary to reassert those rulings here, because there was no basis for an "estoppel," however broadly one uses that disastrous word. This is true because, however nebulous, it has always had at least this solid centre; that the party who invokes it shall have acted to his detriment in reliance upon what the other party has done. That was not the case here. We do not of course mean that the Commissioner devised the plan of amortizing the payments sua sponte; he found it and accepted it. But we do mean that he did not do so because he relied upon the taxpayer in the least; he verified the facts for himself and reached an independent conclusion. Indeed, as we have seen, while it was still possible to assess a deficiency for 1929, he overbore a doubt plainly declared by one of his assistants as to whether the right way was not to tax the whole payment for that year. To talk of any "estoppel" in such circumstances is absurd; it is to meet exactly such situations that statutes of limitations are passed. They are often engines of injustice; their justification lies in furnishing an easy and certain method of solving problems which are often intrinsically insoluble, or soluble only with so much uncertainty and after so much trouble that in the long run the game is not worth the candle. Perhaps they are not justifiable at all; equity has always been too sentitive to their possible harshness to accept them. But where they do exist one must be prepared for hard cases, and it is no answer that this is one.

The Commissioner asserts in addition that the parties had agreed that the tax should be assessed as he has assessed it. The Board found otherwise, and the point deserves no discussion, even if such an agreement would have been valid, if it had been made.

Order affirmed.