## LOFQUIST REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6783.

Circuit Court of Appeals, Seventh Circuit.

March 24, 1939.

946

Walter H. Eckert, Tom Leeming, and Tim G. Lowry, all of Chicago, Ill., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Arnold Raum, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

The taxpayer petitions for review of a decision of the Board of Tax Appeals disallowing its claim for refund of $433.22, the total amount of taxes paid by it for the year 1932, which disallowance was based on principles of estoppel.

Petitioner sold property on the installment basis in 1929, utilizing the installment statute, section 44 (b) and (d) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. § 44(b) note (d).[1] In the same year, it assigned the installment contract to Oscar Lofquist, its president and sole stockholder, but made no disclosure of such transfer in its 1929 return. In its 1930, 1931, and 1932 returns executed by Lofquist, as president, the petitioner represented the installment payments as its own income and paid the tax thereon. In its 1933 return it represented for the first time that the contract had been transferred. It was then too late to make the proper assessment against the petitioner for 1929, which would have exceeded the taxes actually paid. We are confronted with the question—Is the petitioner now estopped from asserting, for the purpose of obtaining a refund of the 1932 tax, that the contract was actually transferred in 1929?

The facts found by the Board were substantially as follows: The petitioner was an Iowa corporation. It was incorporated October 13, 1910, for a period of twenty years. Its purpose was to acquire a leasehold on a building in Des Moines, Iowa. This property was leased by petitioner on October 14, 1910, for a period of seventy-three years. On April 22, 1929, it entered into a contract to sell all of its right, title and interest under the lease and improvements made upon the property by it, to the DeHaan Company, effective May 1, 1929.

The book value of the leasehold interest in this property at the date of sale was $8,433.10, and the price at which it was sold to the DeHaan Company was $25,000, of which $5,000 was to be paid in cash at the time of the sale, and $4,000 annually to petitioner for the five succeeding years with interest on the unpaid balance at the rate of five per cent per annum.

[1] "§ 44. Installment basis.

\* \* \* \* \* \*

"(b) Sales of realty and casual sales of personalty. In the case \* \* \* of a sale or other disposition of real property, if in either case the initial payments do not exceed 40 per centum of the selling price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term 'initial payments' means the payments received in cash or property other than evidence of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

\* \* \* \* \* \*

"(d) Gain or loss upon disposition of installment obligations. If an installment obligation is \* \* \* distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and \* \* \* the fair market value of the obligation at the time of such distribution, transmission, or disposition. \* \* \* The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full."

All of the capital stock of petitioner was owned by Lofquist, with the exception of four qualifying shares, two of which were held by his wife and two by his sister. It kept only memorandum records, and had a stock record book but no minute book or general ledger. It employed a part-time bookkeeper who worked at irregular intervals and made up the accounts once a year for tax purposes. There were no stockholders' or directors' meetings. The capital of the corporation, approximately $12,000, was contributed by Oscar Lofquist.

On May 17, 1929, petitioner assigned its interest under the contract to Oscar Lofquist, who, on the same day assigned his interest therein to the Des Moines National Bank as security for his personal debts. On that same day the DeHaan Company acknowledged notice of both assignments and they were on that date recorded in the office of the Recorder of Polk County, Iowa. Thereafter, all payments under the contract were made by the DeHaan Company to the Des Moines National Bank, and by it applied to the personal obligations of Oscar Lofquist. Thereafter the only assets of the petitioner consisted of $104.89 cash, and loans receivable in the sum of $491.33. After the assignment the petitioner transacted only that business necessary to wind up its affairs. This was permitted to be done under section 8392 of the Iowa Code 1927.

On petitioner's income tax return for 1929, signed by Oscar Lofquist as president and duly filed on June 3, 1930, the sale of the leasehold in 1929 was reported as resulting in a profit to petitioner of $16,566.90, and inasmuch as one-fifth of the total sale price was received in that year, the corporation, on the installment basis, included one-fifth of $16,566.90 in its income. The return showed a tax of $21.87 which was paid. It also disclosed a payment of cash dividends of $5,400 during that year. A like return was filed by the petitioner for the year 1930 reporting the installment profit of $2,650.70 attributable to the $4,000 payment made by the DeHaan Company in that year, and $1,000 received as interest on the unpaid sale price. This 1930 return disclosed a tax liability of $78.08. For the year 1931 a like return was filed by petitioner showing an installment profit of $2,650.70 attributable to the annual payment of $4,000, and $750 as interest on the unpaid portion of the sale price. The amount of $30 was claimed as a deduction for local taxes. Cash dividends of $10,000 were shown as having been paid during that year. This return reflected a tax liability of $44.48. For the year 1932 a like return was made showing an installment profit of $2,650.70, and interest income of $500. This return reported dividends paid during that year of $4,630.81, and disclosed a tax liability of $433.22 which was paid. All of those returns were executed by Oscar Lofquist as president of petitioner.

For the year 1933 the petitioner filed an income tax return, by Lofquist, its president, which showed no income or deductions, but which listed in its balance sheet the sale contract as an asset in the amount of $8,000, and as its liabilities "deferred profit sale contract" in the amount of $5,301.32; common stock in the amount of $5,000; and surplus and undivided profits in the amount of $2,198.58. Under the balance sheet appeared the statement "assets transferred to individuals prior to 1933 but no record made."

On September 14, 1934, there was filed with the Collector of Internal Revenue for the District of Iowa in the name of the petitioner, a claim for tax refunds in the amount of $433.22, representing the total amount of income taxes paid by the petitioner for the year 1932. This claim, signed by Oscar Lofquist as former president of petitioner, was based on the ground that the corporate charter of the company had expired in October, 1930.

In his individual income tax return for 1929 Lofquist included as income the amount of $5,400 received as dividends from the petitioner. No dividends from the company were reported by him for 1930, but for 1931 his return disclosed $10,000 as dividends received by him from the petitioner, and in 1932 he reported like dividends from the same source of $4,630.81. His individual returns for these years reflected no tax liability.

In his tax return for 1933, Lofquist reported as "other income" the sum of $2,650.70 which he explained in an attached schedule as installment profit calculated in the same way as it appeared in the income tax return of the petitioner for the years 1930, 1931 and 1932. A similar item appeared on his return for 1934. His return for 1933 reflected no tax liability and his 1934 return reflected a tax liability of $167.46.

The Board found that if the above recited facts had been disclosed to respond-

ent by the income tax returns of petitioner and Oscar Lofquist, the petitioner would have been liable for the payment of taxes in 1929, pursuant to section 44(d) of the Revenue Act of 1928, in the sum of $1,614.-28 instead of $21.87, as reported in petitioner's income tax return for that year. The Board denied the Commissioner's claim for additional deficiency but concluded that the principle of estoppel could be defensively asserted and accordingly denied the refund.

Petitioner contends that under the sections of the statute above referred to, a refund of an overpayment of taxes is mandatory. If at the time of overpayment no taxes are due for another year, all equitable principles must give way to the statutory command. It argues that when petitioner's tax return for the year 1932 was filed, the statute of limitations had run upon its 1929 return and that the respondent could not be prejudiced with respect to the 1929 return by the representation contained in the 1932 return. In support of this position it relies on McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46. In that case the Court states that the collector did not press his former contention that the petitioner was estopped to challenge the correctness of his returns for the years of overpayment, and that the failure of the Government to assess the appropriate tax in 1928 was not shown to be attributable to the erroneous statements made in returns for the later years. In these respects the case is to be differentiated from the one at bar. Here the respondent is pressing the contention of estoppel by challenging the correctness of petitioner's returns, and the failure of respondent to assess the appropriate tax for 1929 is conclusively shown to be attributable to petitioner's erroneous omissions in its subsequent returns. It is further found in this case that respondent relied upon these false returns and was thereby precluded from collecting $1,614.28 instead of $21.87.

We think it is clear that the respondent, without fault, relied upon petitioner's misrepresentations and that the respondent was prejudiced thereby. In Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, the Court said:

"The action, brought to recover a tax erroneously paid, although an action at law, is equitable in its function. It is the lineal successor of the common count in *indebitatus assumpsit* for money had and receiv-

ed. * * * Its use to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff, and its control in every case by equitable principles, * * * have long been recognized in this Court. * * * Since, in this type of action, the plaintiff must recover by virtue of a right measured by equitable standards, it follows that it is open to the defendant to show any state of facts which, according to those standards, would deny the right, * * * even without resort to the modern statutory authority for pleading equitable defenses in actions which are more strictly legal * * *."

The opinion further states:

"* * * The statute [sections 607, 609, Revenue Act of 1928, 28 U.S.C.A. 1670 (a) (2), 1675 and note,] does not override a defense based on the estoppel of the taxpayer. * * * The statutory bar to the right of action for the collection of the tax does not prevent reliance upon a defense which is not a set-off or a counterclaim, but is an equitable reason, growing out of the circumstances of the erroneous payment, why petitioners ought not to recover.

"Here the defense is not a counter demand on petitioners, but a denial of their equitable right to undo a payment which, though effected by an erroneous procedure, has resulted in no unjust enrichment to the government, and in no injury to petitioners or their beneficiary. The government, by retaining the tax paid by the trustees, is not reviving a stale claim. Its defense, which inheres in the cause of action, is comparable to an equitable recoupment or diminution of petitioners' right to recover."

The foregoing case, from the factual standpoint, is not in all respects like the one at bar, but the principles therein enunciated support the Board's ruling. The facts in Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622, are held analogous to those in the instant case. The ruling there supports our conclusion and we think it is quite reconcilable with the ruling in the McEachern case.

Petitioner contends that respondent must prove that it did not merely make an innocent mistake of law instead of a misrepresentation of facts. We think it clear that petitioner did not make a mistake of law but that it was purely one of fact. It is not necessary in order to support the Board's finding to prove by direct evidence

that petitioner fraudulently intended to make the misrepresentations in question. It is presumed to intend the natural consequences of its acts and the Board was warranted in concluding from those acts that it was responsible for the legal fraud practiced upon respondent.

It is further contended by petitioner that the fact that the assignments were recorded in the County Recorder's office in Iowa, gave the respondent an equal opportunity with the petitioner to ascertain the facts. We think this is not a sound conclusion. The facts presented here were within the knowledge of the petitioner's officers and agents, at all times, and the respondent had a right to rely upon statements under oath submitted in its behalf. To hold otherwise would be to place a burden upon the taxing department, which in all fairness would be unreasonable. See Robinson v. Com'r, 100 F.2d 847.

The decision of the Board is affirmed.