T.C. Memo. 1997-533

UNITED STATES TAX COURT

JANET D. REED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26792-95.                    Filed December 1, 1997.

<u>Thomas M. Herbert</u>, for petitioner.

<u>Susan E. Seabrook</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes:

|       |            | Additions to Tax | | |
| Year  | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6654 |
|-------|------------|-----------------|-----------------|-----------|
| 1988  | $36,638    | $8,960          | $1,832          | $2,287    |
| 1989  | 74,747     | 18,491          | ---             | 4,995     |
| 1990  | 12,515     | 2,931           | ---             | 730       |
| 1991  | 13,084     | 3,271           | ---             | 752       |
| 1992  | 26,708     | 6,532           | ---             | 1,138     |
| 1993  | 15,679     | 3,720           | ---             | 620       |

These determinations were reflected in two notices of deficiency (one for years 1988, 1989, and 1990; the other for years 1991, 1992, and 1993), each dated September 29, 1995. Subsequent to the issuance of the notices of deficiency, the docketing of this case, and after the joinder of issues, petitioner filed delinquent Federal income tax returns for each of the years at issue. (The notices of deficiency were based on income items reported by third party sources and utilized the standard deduction.) The delinquently filed returns incorporated the income adjustments determined by the notices of deficiency and reported income in excess of that contained in the notices of deficiency. The returns also reported deductions not contemplated by the notices of deficiency. Upon review by respondent, except for losses reported in Schedules F, the returns were accepted as filed.

Petitioner orally sought leave to amend her petition to raise the issue of the Schedule F losses via a conference call held on April 11, 1997. Respondent's counsel consented to the trying of this issue, and the trial proceeded accordingly. See Rule 41(b).

After respondent's acceptance of petitioner's tax returns, the resulting tax deficiencies and additions to tax in dispute are as follows:

| | | Additions to Tax | |
|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1988 | --- | --- | --- |
| 1989 | --- | --- | --- |
| 1990 | [1]$12,485 | $3,319 | $779 |
| 1991 | [1]4,178 | 1,045 | 241 |
| 1992 | [1]35,031 | 8,903 | 1,523 |
| 1993 | [1]28,390 | 5,656 | 911 |

[1]    These amounts do not take into account prepayment credits in the amounts of $816, $783, $792, $2, $580, and $801 for tax years 1988, 1989, 1990, 1991, 1992, and 1993, respectively.

Following concessions,[1] the sole unagreed matter concerns petitioner's entitlement to losses sustained from certain cattle-ranching business activities. In this regard, we must determine whether petitioner conducted these cattle-ranching business activities as a sole proprietor or through Spirit Horse Ranch, Inc., during the years at issue.[2]

All section references are to the Internal Revenue Code as in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

---

[1]    Petitioner agrees that except for the disallowance of the Schedule F losses, respondent's income adjustments in the notices of deficiency are correct.

[2]    At trial, we found that the cattle-ranching activities were operated for profit.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Albuquerque, New Mexico.

Cattle-Ranching Business

Spirit Horse Ranch, Inc. (Spirit Horse Ranch), was incorporated in New Mexico on July 3, 1986. The incorporation documents listed Sonny Jim James as president and petitioner as vice president, secretary, and treasurer. Spirit Horse Ranch operated under several different names during the years in issue.

Spirit Horse Ranch was engaged in cattle-ranching activities located near Grants, New Mexico. The activities included the breeding of cattle, as well as the sale of steers (male calves) for beef or roping. The cattle grazed on land owned by the El Morro Valley Land Co. (El Morro). (Petitioner, who was a licensed New Mexico real estate broker, sold El Morro's subdivisions and later became the majority stockholder and president of that company.)

Spirit Horse Ranch acquired parcels from El Morro for its own use. It maintained some improvements on the land, including corrals, a boxcar (used for a shop), and a tack room to store feed, saddles, and bridles. Petitioner also maintained three

mobile homes on the ranch property, one of which served as her personal residence.

Spirit Horse Ranch never issued any stock. Nor did Spirit Horse Ranch ever file Federal corporate income tax returns or New Mexico corporate franchise tax reports.

Spirit Horse Ranch maintained bank accounts with both United New Mexico Bank and Ranchers State Bank. These bank accounts were used to pay the expenses of operating the ranch. Both petitioner and Mr. James were signatories on the bank accounts. Deposits into the accounts came solely from petitioner. Occasionally, cash disbursements were made from the bank accounts to petitioner and Mr. James, although more frequently to Mr. James.

Petitioner maintained Spirit Horse Ranch's books and records. In addition, she paid the bills and wrote the checks.

On July 29, 1988, petitioner conveyed title in her personal residence in Albuquerque, New Mexico, to Spirit Horse Ranch. Title to that property was conveyed back to petitioner on December 18, 1996. On February 24, 1997, the Albuquerque residence was again conveyed to Spirit Horse Ranch.

Petitioner's Other Business Activities

During the years in issue, petitioner had ownership interests in several entities other than Spirit Horse Ranch, including: Red Carpet Realty, Inc., Red Barn Realty, Inc., Western Escrow Corp.,

New Mexico Chemical Corp., and El Morro Valley Land Co.  Some of these entities were S corporations; others were C corporations.

Petitioner filed with the State of New Mexico a statement of intent to dissolve some of these entities.  Petitioner did not timely file Federal corporate income tax returns for some of the entities even though she was aware of her obligation to do so.

Request To Grant Spirit Horse Ranch S Corporation Status Retroactively

On December 21, 1996, petitioner's accountant wrote the Internal Revenue Service Center (IRS) in Austin, Texas, requesting the IRS to validate Spirit Horse Ranch's invalid S corporation election for tax year 1986 forward, or in the alternative to validate the election for tax year 1990 forward.  In pertinent part, the letter states:

> We have been engaged to file certain past due income tax returns for Janet D. Reed and to file certain past due income tax returns for corporations owned by her including Spirit Horse Ranch, Inc.  In the course of reviewing and reconstructing the past financial records of Spirit Horse Ranch, Inc. and from discussions with Ms. Reed concerning her intent for the corporation, it has been determined that Spirit Horse Ranch, Inc. should have been operated as an S Corporation.  Under the new provisions of IRS Section 1362 referenced above, we are requesting that the IRS validate the S Corporation election for Spirit Horse Ranch, Inc. effective for the corporation's initial tax year of December 31, 1986 and for all years since that first year.  We feel that there is reasonable cause to allow this validation of election.

>      *       *       *       *       *       *       *

> Based on a review of the corporate records it is unclear as to whether this Form 2553 was ever filed with the IRS or whether any acknowledgment of the S Corporation status

was ever received from the IRS if it was filed. As stated above, it was Ms. Reed's intention to have Spirit Horse Ranch, Inc. be an S Corporation from it's [sic] inception in 1986 even though there is no evidence of a Form 2553 being prepared until 1989.

> \*  \*  \*  \*  \*  \*  \*

> \*  \*  \* it is requested that the election as an S Corporation by Spirit Horse Ranch, Inc. effective for the calendar year ending December 31, 1986 be validated and the taxpayer be promptly notified of the decision. In the alternative it is requested that the election be validated for the calendar year ending December 31, 1990 as shown on the Form 2553.

Petitioner signed the letter acknowledging its content and accuracy. As of the date of trial, the IRS had not responded to petitioner's request.

Federal Tax Returns

Petitioner filed her 1988 through 1993 Federal income tax returns in February 1997. Petitioner's 1988 tax return reported adjusted gross income of negative $97,376, which included farm losses from her cattle-ranching activities on Schedule F (Profit or Loss From Farming) of $67,904; the 1989 tax return reported adjusted gross income of negative $62,337, which included farm losses on Schedule F of $61,960; the 1990 tax return reported adjusted gross income of $42,247, which included farm losses on Schedule F of $44,838; the 1991 tax return reported adjusted gross income of $13,250, which included farm losses on Schedule F of $35,992; the 1992 tax return reported adjusted gross income of $109,928, which included farm losses on Schedule F of $33,060; and

the 1993 tax return reported adjusted gross income of $84,484, which included farm losses on Schedule F of $20,220.

OPINION

Our task herein is to determine whether petitioner operated her cattle-ranching activities as a sole proprietor or through Spirit Horse Ranch during the years in issue.  If we decide that petitioner ran the business as a sole proprietor, then petitioner is entitled to deduct the losses from the cattle-ranching activities on her Federal income tax returns.

Petitioner contends that she formed Spirit Horse Ranch in order to own the cattle ranch with Mr. James.  She reasons Spirit Horse Ranch's corporate form should be disregarded because (1) Mr. James failed to make capital contributions to the entity, (2) no stock was ever issued, and (3) no Federal corporate income tax returns or New Mexico franchise tax reports were ever filed.  Additionally, petitioner asserts that the only reason she used the corporate checking accounts was that she "hated to pay money for checks and not use them".

Generally, a corporation organized for the purpose of carrying on business activity constitutes a separate taxable entity. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 439 (1943); New Colonial Co. v. Helvering, 292 U.S. 435, 442 (1934).  Once the taxpayer has elected to conduct his business affairs in corporate form, the taxpayer must accept the tax disadvantages of that form.

Higgins v. Smith, 308 U.S. 473, 477 (1940).  A taxpayer is not free to "turn around and disclaim the business form he created in order to realize a loss as his individual loss."  Sangers Home for Chronic Patients, Inc. v. Commissioner, 72 T.C. 105, 116 (1979); see also Barker v. Commissioner, T.C. Memo. 1993-280.  An exception to these rules exists where the corporate form is a sham or unreal.  Higgins v. Smith, supra at 477-478.

Whether a corporation is formed or not is a matter of State law; however, whether the corporate entity (if found to exist) should be disregarded for Federal taxation purposes is a matter of Federal law.  Stoody v. Commissioner, 66 T.C. 710, 716-717 (1976).

Under New Mexico law: (1) The filing of the articles of incorporation is conclusive evidence that all conditions precedent to the existence of a corporation have been satisfied.  N.M. Stat. Ann. sec. 53-12-4 (Michie 1978); (2) A corporation that has commenced business activity may dissolve voluntarily by written consent of the shareholders or by an act of the corporation.  Id. at secs. 53-16-2 and 3; (3) Following the decision to dissolve the corporation, a statement of intent to dissolve must be filed with the State.  Id. at sec. 53-16-4; and (4) Upon the filing of the statement of intent to dissolve, the corporation must cease to carry on its business; however, its corporate existence continues to exist until a certificate of dissolution has been issued by the State.  Id. at sec. 53-16-5.

Petitioner formed Spirit Horse Ranch as a New Mexico corporation in 1986, and it continued to exist throughout all of the years in issue. That entity owned real property, maintained bank accounts in its name, and conducted a business activity for profit. All of these factors indicate that Spirit Horse Ranch was not a sham and had a business purpose as well as a substantive business activity. Higgins v. Smith, supra.

It is evident that petitioner did not dissolve Spirit Horse Ranch pursuant to New Mexico law. She never filed a statement of intent to dissolve the corporation even though she may have desired no longer to use its form. To be sure, she admitted that she knew how to dissolve corporations and that she needed to do so.

Further, petitioner's failure to comply with the filing of biennial State franchise tax reports following the formation of a corporation does not cause the corporation's automatic cessation. "[S]uch non-compliance in the absence of * * * [a State forfeiture] proceeding does not in anywise affect the legal existence of the corporation." Skarda v. Commissioner, 250 F.2d 429, 435 (10th Cir. 1957), affg. 27 T.C. 137 (1956).

Finally, it is clear that petitioner did not transfer the business assets of Spirit Horse Ranch to another entity. Spirit Horse Ranch retained the real property (underlying land, improvements, and mobile homes) and the bank accounts during the years in issue. See Weigman v. Commissioner, 47 T.C. 596 (1967),

affd. 400 F.2d 584 (9th Cir. 1968); <u>Hinz & Landt, Inc. v. Commissioner</u>, 8 B.T.A. 375, 379 (1927); see also <u>Perry v. Commissioner</u>, 49 T.C. 508 (1968); cf. <u>Blue Flame Gas Co. v. Commissioner</u>, 54 T.C. 584, 599-600 (1970); <u>Estate of Faris v. Commissioner</u>, T.C. Memo. 1955-268.

Thus, we conclude that the farming losses resulting from petitioner's cattle-ranching activities are those of Spirit Horse Ranch, a New Mexico corporation, and not that of petitioner. Consequently, petitioner is not entitled to deduct those losses on her Federal income tax returns for the years in issue.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.