T.C. Memo. 1999-193


UNITED STATES TAX COURT


RICHARD C. AND HATTIE M. MARTIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WILLIAM L. AND SYLVIA L. MARTIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18241-97, 18247-97.          Filed June 15, 1999.


<u>William M. Weintraub</u> and <u>Brian J. Wright</u>, for petitioners.

<u>Michael H. Salama</u> and <u>Ian Russell</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  These cases were consolidated for purposes of trial, briefing, and opinion.

Pursuant to separate notices of deficiency, respondent determined the following deficiencies and accuracy-related penalties:

Richard C. and Hattie M. Martin, Docket No. 18241-97:

| Year | Deficiency | Sec. 6662(a) |
|------|-----------|--------------|
| 1992 | $103,871 | $20,774 |
| 1993 | 55,302 | 11,060 |
| 1994 | 35,991 | 7,198 |

William L. and Sylvia L. Martin, Docket No. 18247-97:

| Year | Deficiency | Sec. 6662(a) |
|------|-----------|--------------|
| 1992 | $62,427 | $12,485 |
| 1993 | 21,793 | 4,359 |
| 1994 | 31,405 | 6,281 |

Following concessions by the parties, the primary remaining issue to be resolved is whether Cola Performance Products, Inc. is to be recognized as a distinct taxable entity during 1992, 1993, and 1994, the consequence being the disallowance of certain business losses individually claimed by petitioners for each of those years.[1] Also at issue is whether petitioners are liable for section 6662(a) accuracy-related penalties.

_____

[1] William L. Martin acknowledged that he was not involved in the automotive crankshaft manufacturing business at issue, and therefore he and his wife concede that they are not entitled to the business losses they individually claimed. They request that all business losses for the years in issue be attributed to Richard C. and Hattie M. Martin.

All section references are to the Internal Revenue Code and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts is incorporated in our findings by this reference.

Petitioners Richard C. (Richard) and Hattie M. Martin, husband and wife, and petitioners William L. (William) and Sylvia L. Martin, husband and wife, resided in Rolling Hills Estates, California, at the time they filed their respective petitions in this Court contesting respondent's determinations. Richard and William are brothers.

Richard is a principal shareholder of a corporation that is one of the largest commercial drywall, framing, and plastering contractors in the Los Angeles area. For many years, he had an interest in car racing.

Formation of Cola, Inc.

In 1988, Richard and Raul Negrete (Raul) (formerly, the general manager of L.A. Billet, a manufacturer of race car crankshafts) decided to form a corporation that would engage in the business of manufacturing automotive crankshafts for race cars (the business). Both agreed to contribute $100,000 to the corporation.

On June 22, 1988, Richard's attorney, Mark A. Treadwell, of Mantalica & Treadwell, filed the necessary corporate documentation

with the State of California.  Originally, the name of the corporation was Motor Motion, Inc.  On July 11, 1988, the name of the corporation was changed to Cola Performance Products, Inc. (Cola, Inc.).  Cola is an acronym for Crankshafts of Los Angeles.

The first organizational meeting for Cola, Inc. was held on July 22, 1988.  The minutes for that meeting (prepared by Mr. Treadwell) reveal:  (1) Corporate bylaws were adopted; (2) Raul and Richard were elected directors of the company; (3) Raul was elected president, and Richard was elected secretary/treasurer and chief financial officer; (4) 200 shares of stock were authorized to be issued and sold (100 shares to Raul and 100 shares to Richard)  at a price of $25 per share; and (5) the company was authorized to establish a bank account with Union Bank.

Shortly after the company was incorporated, Richard learned that Raul would be financially unable to contribute to the business because of a dispute with his prior business partner.  In the latter part of 1988, Richard discussed this situation with his accountant, Sam White (a partner in the accounting firm of Deloitte & Touche), and the controller of his drywall company, Sandy Hemphill.  They recommended that as long as Raul could not financially contribute to the business, the business should be operated by Richard as a sole proprietorship.

No corporate stock was ever issued.

At all times during the years in issue (1992, 1993, and 1994), Cola, Inc. was a California corporation in good standing. As of the date of trial, it had never been dissolved.

Equipment

In mid-1988, Richard purchased the equipment to operate the business. The equipment (crankshafts and grinding machines) was purchased from L.A. Billet and others. Richard paid for this and other equipment, as well as furniture and fixtures, using funds from his own bank accounts and credit lines. These assets were never contributed to Cola, Inc.

Lease Agreement

On July 21, 1988, Cola, Inc. entered into an agreement to lease a building located at 19122 S. Santa Fe Avenue, Rancho Dominguez, California (S. Santa Fe Avenue), which became the situs for its business operation. The lease was for a period of 60 months, commencing August 1, 1988, and was in existence at all relevant times.

Bank Account and Financial Affairs

The bank account with Union Bank was utilized as the business' operating account during the years in issue. The checks used for this account contained the imprint "Cola Performance Products, Inc.". Checks drawn on Cola, Inc.'s bank account were used to pay: (1) Vendors and suppliers of the business; (2) various business

expenses (such as utilities and telephone); and (3) rental payments for the S. Santa Fe Avenue building.

Cola, Inc. issued invoices to its clients (vendors and suppliers) with the imprint Cola, Inc. at the top of the invoices. Moreover, Cola, Inc.'s vendors and suppliers issued invoices to Cola, Inc. for goods and services the business purchased.

Cola, Inc. maintained a company credit card, which was used to purchase goods and services for the business during 1992. Cola, Inc. also maintained a general ledger, cash receipts journals, and sales journals.

## Employer Identification Number

On February 6, 1991, Richard applied for an employer identification number as an individual using the business trade name "Cola Performance Products". The Internal Revenue Service assigned an identification number to him. This number was used by the business in filing returns and reports with State and Federal tax authorities.

## Lawsuits Filed Against Cola, Inc.

In August 1993, Beta Maskin AB (Beta Maskin), a Swedish corporation, filed a civil action in the U.S. District Court for the Central District of California against Cola, Inc., as well as Richard and Raul individually, for failure to pay the contract price of crankshafts Beta Maskin sold to Cola, Inc. In the answer to this action, the defendants stated:

Defendant Cola Performance Products, Inc. is at this time, and was at all times relevant hereto, a fully capitalized California corporation in good standing. Any and all dealings between plaintiff and any of the defendants were dealings between plaintiff and Cola Performance Products, Inc. Defendants Dick Martin and Raul Negrete were acting in their official capacities as officers and directors of Cola Performance Products, Inc. at all times relevant hereto, as was known to plaintiff and its representatives. Therefore, defendants Martin and Negrete, and each of them, have no liability to plaintiff in this action.

During Richard's May 17, 1994, deposition, relating to the Beta Maskin lawsuit, he stated: (1) He owned 100 shares of Cola, Inc. stock; (2) Cola, Inc. held regular shareholders' and directors' meetings; (3) Cola, Inc. owned property such as grinding equipment, mills, lathes, and other equipment for manufacturing race car crankshafts; (4) he lent money to Cola, Inc. on several occasions (as recent as 2 weeks prior to his deposition); and (5) the debt owed to Beta Maskin was only that of Cola, Inc.

Further, during his deposition, Richard answered the question: "What information do you have that leads you to believe that Mr. Lindstrom [the owner of Beta Maskin] and Beta Maskin dealt with Cola Performance Products as a corporation as opposed to you and Mr. Negrete as individuals?" by stating: "Mr. Lindstrom dealt with Cola Performance Products, period. He didn't deal with us as individuals under any conditions, never has. We don't operate that way. We operate as a corporation."

Raul also was deposed on May 17, 1994, and he corroborated the statements Richard made in his deposition.

On July 1, 1994, the defendants filed a memorandum of contentions of facts and law, asserting that Cola, Inc. had substantial capital assets, stockholders, a lease for a manufacturing plant, and had engaged in a continuous course of business activity since 1988.

In November 1994, the Beta Maskin lawsuit was settled. The parties agreed that only Cola, Inc. was liable for the asserted obligation to Beta Maskin. Richard and Raul signed the settlement agreement as officers of Cola, Inc. A note payable was created on Cola, Inc.'s general ledger reflecting Cola, Inc.'s obligation under the settlement agreement.

Cola, Inc. was sued by other businesses with which it had contracted; i.e., Axis Engineering in 1992, and Sterling Air Cargo, Inc. in 1994. In satisfaction of the default judgment in the Axis Engineering lawsuit, Cola, Inc. issued a check drawn on the corporate bank account with the imprint "Cola Performance Products, Inc."

Income Tax Returns

Petitioners timely filed Federal income tax returns for 1992, 1993, and 1994. They individually claimed losses on Schedules C of their respective tax returns for those years with respect to the automotive crankshaft business, as follows: Richard and his wife,

Hattie, claimed Schedule C losses of $540,567, $173,480, and $248,653 for 1992, 1993, and 1994, respectively; and William and his wife, Sylvia, claimed Schedule C losses of $195,541, $66,991, and $90,170 for 1992, 1993, and 1994, respectively.

Cola, Inc. filed corporate income tax returns (Forms 1120) for 1992, 1993, and 1994, reporting no taxable income or expenses (other than a franchise tax fee paid to the State of California).

Respondent disallowed the Schedule C losses petitioners claimed on their respective returns on the grounds: (1) The losses belonged to Cola, Inc., and not petitioners as individuals; and (2) petitioners failed to demonstrate that the losses were actually incurred.

OPINION

Issue 1.  Characterization of Cola, Inc.

The fundamental issue involved is whether Cola, Inc. constituted a separate corporate taxable entity during 1992, 1993, and 1994.  Respondent contends that it did, and accordingly, Cola, Inc.'s losses were improperly deducted on petitioners' individual returns.  On the other hand, petitioners maintain that shortly after Cola, Inc.'s formation, Richard learned that Raul would be unable to contribute capital to the corporation as anticipated and consequently, Richard was forced to abandon the business' corporate form and operated it as a sole proprietorship.

Generally, a corporation organized for the purpose of carrying on a business activity constitutes a separate taxable entity.  See Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  A corporation will not be disregarded for Federal tax purposes if it (1) served an intended business function, or (2) engaged in business.  See id. at 438-439.  However, if the corporate form is a sham or unreal, it will be disregarded.  See  Higgins v. Smith, 308 U.S. 473, 477-478 (1940).

Once the taxpayer has elected to conduct his business affairs in corporate form, the taxpayer must accept any tax disadvantages of that form.  See id. at 477.  A taxpayer is not free to "turn around and disclaim the business form he created in order to realize a loss as his individual loss."  Sangers Home for Chronic Patients, Inc. v. Commissioner, 72 T.C. 105, 116 (1979); see also Barker v. Commissioner, T.C. Memo. 1993-280.

Whether a corporation exists or not is a matter of State law; however, whether the corporate entity (if found to exist) should be disregarded for Federal taxation purposes is a matter of Federal law.  See Stoody v. Commissioner, 66 T.C. 710, 716-717 (1976). Here, it is clear that Cola, Inc. was formed on June 22, 1988, as a distinct corporate entity under California law and it continued to be a valid, legally existing corporate body during the years at issue.  And, for the reasons set forth below, we believe Cola,

Inc.'s corporate status for Federal tax purposes should not be disregarded.

Cola, Inc. was not a sham. It served an intended business purpose. Indeed, in this regard, through Cola, Inc.'s corporate form, Richard and Raul insulated themselves from individual liability. See, e.g., Strong v. Commissioner, 66 T.C. 12, 25 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977); Bolger v. Commissioner, 59 T.C. 760 (1973). Most notably, this was done when Beta Maskin filed a lawsuit against Cola, Inc., and Richard and Raul. Tellingly, in defending themselves, Richard and Raul asserted that Cola, Inc. was "a fully capitalized California corporation in good standing", and that they acted in their official capacities as officers and directors of Cola, Inc. in all dealings with Beta Maskin.

In addition to serving an intended business function, Cola, Inc. engaged in business activities. It maintained a bank account from which receipts and expenditures flowed. It leased property which was the situs of the automotive crankshaft manufacturing business. It maintained books and records. It issued invoices to clients. It maintained a credit card. And it held itself out to the public as a distinct corporate entity.

We are convinced that Cola, Inc. engaged in sufficient business activities so as to render it a separate taxable entity. In this regard, whether or not a corporation is deemed to engage in

a business activity does not depend upon the quantum of business activity but simply whether the entity engaged in some business activity. See <u>Dooley v. Commissioner</u>, T.C. Memo. 1984-548 (citing <u>Britt v. United States</u>, 431 F.2d 227 (5th Cir. 1970)); see also <u>Hospital Corp. of Am. v. Commissioner</u>, 81 T.C. 520, 579-580 (1983); <u>Reed v. Commissioner</u>, T.C. Memo. 1997-533.

Petitioners point to <u>Blue Flame Gas Co. v. Commissioner</u>, 54 T.C. 584 (1970), as factually similar to the case herein. We disagree. At the time the taxpayers filed articles of incorporation in <u>Blue Flame</u>, they operated as a partnership. No property was contributed to the corporation, no business was conducted, and the corporation was subsequently abandoned. We therein concluded that the losses were produced by the partnership. See <u>id.</u> at 599. The facts herein are clearly distinguishable from those in <u>Blue Flame</u>. Moreover, the taxpayer in <u>Blue Flame</u> "did not seek the protective shield of corporate existence against business creditors", <u>id.</u> at 600, in sharp contrast to what happened here.

In sum, the losses resulting from the manufacture of crankshafts for race cars during the years in issue are those of Cola, Inc., and not those of petitioners. Consequently, petitioners are not entitled to deduct those losses on their respective individual Federal income tax returns.

Issue 2.  Section 6662(a) Accuracy-Related Penalties

The other issue for decision is whether petitioners are liable for the section 6662(a) accuracy-related penalties for the years in issue.

Pursuant to section 6664(c)(1), a section 6662 penalty does not apply to any portion of an underpayment if reasonable cause existed and the taxpayers acted in good faith.  Pursuant to section 1.6664-4(b)(1), Income Tax Regs., all facts and circumstances must be examined in order to determine whether a taxpayer acted with reasonable cause and in good faith.

Petitioners assert that they had reasonable cause to deduct Cola, Inc.'s losses on their individual Federal income tax returns for the years in issue.  They contend that they relied in good faith upon Sam White who prepared their returns for the years in issue. Mr. White did not testify due to the fact he was incarcerated at the time of trial.

In order to establish good faith reliance on the advice of an adviser, the taxpayer must prove:  (1) He gave the return preparer complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer believed in good faith that he was relying on a competent return preparer's advice.  See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

As to Richard and his wife, we are satisfied that they reasonably relied upon the advice of Mr. White in claiming the business losses on their individual tax returns for the years at issue. After Richard learned that Raul would be financially unable to contribute to the business, he met with Mr. White and Ms. Hemphill. Ms. Hemphill corroborated that such a meeting occurred. She testified that, at this meeting, it was decided that "Cola Performance would operate as a sole proprietorship and was not going to operate as a corporation." We found Ms. Hemphill to be a credible witness. Accordingly, we do not sustain respondent's accuracy-related penalties determination as to Richard C. and Hattie M. Martin for any of the years in issue.

However, as to William and his wife, we are not satisfied that they reasonably relied upon the advice of Mr. White in claiming the business losses on their individual tax returns for the years at issue. William testified that "Sam White came to me and said that he * * * [believed] * * * that [I could] participate in some losses. And I said, if that's what you think I can do, be my guest." William and his wife, Sylvia, claimed Cola, Inc.'s losses even though they were aware that they had neither an ownership interest in, nor an involvement with, the business. By doing so, they did not act in good faith; we believe a reasonably prudent person under the same circumstances would not have claimed the losses. Accordingly, we sustain respondent's accuracy-related

penalties determination as to William L. and Sylvia L. Martin for 1992, 1993, and 1994.

To reflect the foregoing and concessions of the parties,

<u>Decisions will be entered under Rule 155</u>.